Argued January 4, reversed July 15, 1965

# CAMPBELL *v.* HENDERSON ET AL
403 P. 2d 902

*Alex L. Parks,* Portland, argued the cause for appellants and cross-respondents. On the briefs were Robert Y. Thornton, Attorney General, and Louis S. Bonney, Assistant Attorney General, Salem.

*James H. Clarke,* Portland, argued the cause for respondent and cross-appellant. With him on the brief were Koerner, Young, McColloch & Dezendorf and John P. Bledsoe, Portland.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell, Goodwin, Holman and Lusk, Justices.

LUSK, J.

This is a proceeding under the "Uniform Declaratory Judgments Act," ORS 28.010-28.160, brought by a duly licensed dentist to obtain a judicial declaration that certain regulations of advertising by dentists adopted and promulgated by the defendant, Oregon State Board of Dental Examiners, are invalid. The defendant, in its answer, joined in the request for a declaration, and the court entered a decree sustaining some of the regulations and holding others invalid. Both sides have appealed.

The regulations were adopted by the board on November 2, 1962, and purport to be interpretations of ORS 679.140, as it read at that time. This section then provided that a dentist may have his license revoked or suspended for unprofessional conduct, and that "Unprofessional conduct means" (among other acts not now pertinent) five particularly described forms of advertising.[1]

In 1963 the definition of unprofessional conduct was changed by Oregon Laws 1963, ch 284, § 8, so as to read: "Unprofessional conduct as used in this chapter *includes but is not limited to* the following" (italics added). The remainder of the section was left substantially unchanged.

Although this suit was commenced on December 10, 1962, it was not tried until March 11, 1964. In the meantime, on October 30, 1963, after the amendment above referred to became effective, the parties entered into a stipulation in writing which recites:

> "Said rules and regulations purport to interpret and construe ORS 679.140, which reads in material part as follows:".

The stipulation then quotes the statute relating to unprofessional conduct by advertising as it read prior

---

[1] ORS 679.140: "* * * * *

"(2) * * * * *

"(e) Making use of any advertising statements of a character tending to deceive or mislead the public.

"(f) Advertising professional superiority or the performance of professional services in a superior manner.

"(g) Advertising prices for professional service.

"(h) Advertising by means of large display, glaring light signs, or containing as a part thereof the representation of a tooth, teeth, bridgework or any portion of the human head.

"* * * * *

"(j) Advertising any free dental work or free examination. "* * * * *"

to the amendment. The stipulation further stated that "defendant has notified plaintiff of its intention to institute proceedings in due course for suspension or revocation of his license upon the grounds that his past and current advertising result [sic] in a violation of said basic statutes, *as interpreted by the defendants in the rules and regulations in controversy,*" and that "[t]o the extent to which plaintiff is required to modify *his existing advertising policy* in order to conform to said rules and regulations, plaintiff will suffer damage * * *." (Italics added.)

The briefs do not mention the 1963 amendment changing the definition of unprofessional conduct and the only reference to it at the oral argument occurred when, in answer to a question from the bench, counsel for the board stated that the amendment did not increase the authority of the board to regulate the practice of dentistry "with respect to advertising," and that "the legislative history made very clear before the legislative committees that it was not intended to broaden the authority of the board with respect to advertising regulations—it related to other things as gouging, overcharging and so forth." Counsel for the board is also its executive secretary. The minutes of the Senate Committee on Health and Welfare which reported out the 1963 amendment disclose that in advocating before the committee the adoption of the amendment counsel for the board took a similar position as to its meaning.

Although the parties join in asking the court to exercise its authority under the declaratory judgments act, we are constrained to hold that we should not do so for the reasons now to be stated.

The case presents the question whether the statute

as it read prior to its amendment has been violated by the plaintiff. But more is involved. This is not a private lawsuit between the plaintiff and the board, but a public controversy in the decision of which the entire dental profession and the public itself have a vital interest. Such a decision, however, would necessarily be upon the construction of the dental advertising statute, not as it reads today, but as it read prior to its amendment in 1963.

The opinion of the attorney for the board that this amendment did not increase the authority of the board to regulate the practice of dentistry with respect to advertising, but related only to other subjects, such as gouging and overcharging, while entitled to respectful consideration by the court, can scarcely be regarded as conclusive. It is certainly arguable that today unprofessional conduct by a dentist, within the meaning of the amended statute, includes not only the forms of advertising expressly mentioned, but others which the board may determine, not by way of interpretation of that statute, but under its powers "[t]o make and enforce rules and regulations for the * * * practice of dentistry, * * *" (ORS 679.250 (7)), should be prohibited. We express no opinion upon these matters, as they have not been argued and are now involved only insofar as they have a bearing upon the question whether the court, in the exercise of its discretion, should accept jurisdiction and issue a declaratory judgment.

■■ Although the declaratory judgment act should be liberally construed and the remedy liberally applied to the end that relief may be obtained from "uncertainty and doubt" (Recall *Bennett Com. v. Bennett et al*, 196 Or 299, 322, 249 P2d 479); yet, as stated in Borchard on Declaratory Judgments (2d ed) 304

(quoted with approval in the Bennett case, 196 Or at 323):

> "The declaration will be refused where in the court's opinion it is inexpedient, for some reason outside the record, such as public policy, or where the question might be raised again in some other way or where it would be embarrassing in the operations of government. * * *"

In our opinion it is in the public interest that the question of the limitations upon the right of a dentist to advertise, if it is to be determined in a declaratory judgment proceeding, should be determined in the light of the law as it is today, not as it was more than two years ago when this suit was instituted. It is entirely possible that advertising practices of the plaintiff, permissible under the former statute, might be forbidden by the existing statute when supplemented by regulations adopted by the board.[2] Doubt and uncertainty which a declaratory judgment proceeding is intended to dispel, might still remain as to the validity of some or all of the regulations here in issue. The plaintiff, moreover, is not seeking merely guidance for his future conduct, for he concedes, in effect, that even during the pendency of this case he was advertising in violation of the regulations. He has already "acted on his own view of his rights:" Borchard, op. cit. 58, and in his case the declaratory judgment would not serve one of its principal purposes. The board, on the other hand, intends to institute proceedings for suspension or revocation of his license for such alleged violations. We may recognize that the existence of another remedy is not necessarily adequate ground for refusing declaratory relief: Borchard, op. cit. 317;

---

[2] The circuit court held eleven of the regulations invalid in whole or in part.

yet the availability of other relief is a factor to be considered in determining whether declaratory relief should be granted: *Witschner v. City of Atchison,* 154 Kan 212, 214, 117 P2d 570; 26 CJS 84, Declaratory Judgments § 17.

For the foregoing reasons the decree of the circuit court is reversed and this suit is dismissed.

O'CONNELL, J., dissenting.

I believe that the rules and regulations adopted by the board were a reasonable interpretation[①] of ORS 679.140 as that section read before the 1963 amend-

---

[①] The rules and regulations the validity of which are attacked by the plaintiff are as follows (those which were held invalid by the trial court are marked with an asterisk, and those which plaintiff contends should have been held invalid are marked with a double asterisk):

* "10-055 (2) The use of the name 'Clinic', 'Institute', or other title that may suggest a public or semipublic activity unless such use is intended to convey the fact that such 'clinic' or 'institute' offers comprehensive examination and treatment by all of the dental specialties recognized by the board, to-wit: oral surgery, periodontics, orthodontics, pedodontics, prosthodontics, oral pathology, and oral roentgenology." [Held invalid only "insofar as such rule prohibits use of the word 'clinic' "]

* "10-055 (6) By advertising any dentist's name in connection with any dental office; unless such dentist is personally present therein operating as a dentist, or personally overseeing the operations performed in such office, during the time that office is being operated (temporary absences excepted), subject, however, to the provisions of subsection (5) of this section."

** "10-055 (7) Advertising which emphasizes extractions of teeth and/or the furnishing of dental plates or other artificial appliances so that the public might be misled into believing that extraction of teeth is the common, rather than the uncommon treatment, or that encourages the public to submit to extraction of the teeth except in cases of necessity, or that intimates or is subject to the construction that any dental plate or artificial appliance is equal to or superior to one's natural teeth."

* "10-055 (9) Subsections (3), (5), . . . and (8) of Rule 10-060."

* "10-055 (10) Subsections (2) and (4) of Rule 10-065."
* "10-060 (3) Statements that encourage patronage by the public because certain operative or prosthetic procedures or type or types of services are used by certain dentists, when in fact the same are in use or available to other dentists, subject, however, to the provisions of subsection (3) of section 10-055."
* "10-060 (5) Statements (such as 'scientifically equipped'; 'latest modern equipment'; 'modern methods'; 'modern devices'; or any other similar expressions) which encourage patronage by the public because the dentist has office facilities superior to those of other dentists generally."
* "10-060 (7) Any expression such as: 'quality dentistry'; 'quality dental service'; 'modern dentistry'; 'scientific dentistry'; 'reliable dentistry'; 'dependable dentistry'; 'quality work'; 'beautiful dentistry'; or references to staff or school dentists or schooled employees or to nurse or dental nurse in attendance; or that any certain piece of dental work is a creation or work of art; or that any such dental work results from a dentist's inherent artistry; or any similar expressions."
* "10-060 (8) Statements that a certain dentist uses or may use a special material, drug, formula, medicine or appliance when the same is available for use by other dentists generally."
* "10-065 (2) References to when and how the price of professional services can be paid, such as: 'credit dentistry'; 'easy terms'; 'no interest'; 'no carrying charges'; 'pay nothing down'; 'up to 26 months to pay'; ['dental plates on free trial'; 'no obligation'; or any similar words and phrases.]" (Only the bracketed portion held valid)
** "10-065 (4) Any statement, either direct or inferential, that a fee schedule different from that of other offices in the state may be obtained in a certain office."
** "10-070 (1) The prohibited 'advertising by large display' is deemed to include all such advertising, whether it be by signs, newspaper, television or other visual media. Whether any advertising sign displayed, or other advertisement utilized by a dentist, violates this prohibition is a question of fact to be decided in each individual case."
** "10-070 (2) Where a dentist is advertising by means of signs, some of the relevant factors that will be taken into consideration by the Board in determining whether such dentist is advertising by means of 'large display' include:
    "(a) The size of a sign;
    "(b) The height at which such sign is displayed;
    "(c) The background upon which any such sign is displayed;
    "(d) The manner in which any such sign is attached to the building on which it is displayed;

ment. Since the 1963 amendment certainly did not further limit the board's power to regulate advertising, it follows that the rules and regulations are within the board's delegated authority to interpret the amended statute. The only change resulting from the 1963 amendment was to substitute for the phrase "Unprofessional conduct means" the phrase "Unprofessional conduct as used in this chapter includes but is not limited to the following." In commenting on the amendment before the legislative committee considering the bill, the board's representative stated that the amendment was not intended to enlarge the board's power over permissible advertising. But when this representation was made the legislative committee had before it the very rules and regulations which are the subject of this suit. The board, in effect, told the legislative committee that the rules and regulations were a fair interpretation of ORS 679.140 prior to the amendment. The authority of the board to adopt such rules and regulations was not represented to be based upon the proposed amendment. If the legislative committee had felt that the board did not have the authority to interpret the statute as the board did in making

"(e) The make-up of the sign itself; . . ."

** "10-070 (3) Where advertising is by newspaper or other publication, some of the relevant factors that will be taken into consideration by the Board in determining whether a dentist in advertising by means of 'large display' include: * * *
* "(b) The comparative size and lettering of other advertisements on the same page;
** "(c) The make-up of the advertisement itself."

* "10-070 (4) (b) By a dentist's placing or permitting the placing of any advertisement in print, type or writing in any newspaper, magazine, newsletter or similar publication, using letters of over 18 point type or over ¼th of an inch in height."

** "10-075 (2) Statements that any dental service will be rendered within a fixed or approximate period of time."

the rules and regulations, one would expect that the committee would have modified the statute or at least would have made some comment in the course of the hearing.

But leaving aside speculation concerning legislative intent, I believe that the rules and regulations in question were within the board's authority under the statute either as amended or in its original form. Accepting this view of the matter, the decision of this court would not, as the majority holds, be a fruitless gesture but would serve to advise the parties and the dental profession as to the permissible limits of dental advertising. My conclusion that the rules and regulations adopted by the board are valid is based upon the following considerations.

Some of the statutory limitations placed upon the character of dental advertising make it clear that the legislature recognized the impropriety of certain forms of advertising, not because it was false or deceptive but only because it was contrary to the standards of ethics established by dentists as a group of professional people. Thus it is improper for a dentist to advertise "by means of large display, glaring light signs, or advertising containing as a part thereof the representation of a tooth, teeth, bridgework, or any portion of the human head." That proscription is but a part of the general limitation upon dental advertising self-imposed by the dentistry profession itself based upon an ethical norm which it, like the medical profession and the legal profession, regards as essential to its status as a professional group. And, as pointed out in *Semler v. Oregon State Board of Dental Examiners*, 294 US 608, 612, 55 S Ct 570, 79 L Ed 1086 (1934), "what is generally called the 'ethics' of the profession is but the consensus of expert opinion as

to the necessity of such standards." From the statement of its "Principles of Ethics" it is apparent that the dentistry profession has substantially the same attitude toward advertising as does the medical and legal professions. The statement of the Principles of Ethics of the American Dental Association, Section 12, provides that:

> "The dentist has the obligation of advancing his reputation for fidelity, judgment and skill solely through his professional services to his patients and to society. The use of advertising in any form to solicit patients is inconsistent with this obligation because it reflects adversely on the dentist who employs it and lowers public esteem of the dental profession."

Other sections deal with the use of professional cards and letterheads, office door lettering and signs, announcements, use of the term "clinic" and other forms of advertising. These limitations upon dental advertising indicate that the organized dentistry profession regards promotional dental advertising with substantially the same distaste as the medical and legal professions regard advertising of services by their members. For some reason not disclosed by the record, advertising of dental services in Oregon has customarily exceeded the limits set by the organized dental profession in its statement of principles of ethics. This does not mean that these excesses must continue if they constitute unprofessional conduct. As I have previously noted, the standard of professional conduct is "the consensus of expert opinion as to the necessity of such standards." The legislative assembly has delegated to the Board of Dental Examiners certain powers and duties, among which are those involved in carrying out the purposes of ORS 679.140. This necessarily involves the appraisal by the board of the

conduct of dentists charged with unprofessional conduct to determine whether the ethics of the profession have been violated.

The legislature must have understood that in making this appraisal of the conduct of its members, including conduct in advertising dental services, the board would apply the ethical standards of the profession. In the present case the board's rules and regulations are an interpretation and implementation of ORS 679.140 reflecting the standard of ethical conduct which we may assume expresses the attitude of the dental profession in this state.[8] The board's power to interpret the sense of the profession in matters of advertising is essentially the same as that enjoyed by the medical board. It is not possible to describe with precision the permissible limits of professional advertising. Leaving aside false or deceptive advertising, there is not much that one can say in explanation of the limitation on professional advertising other than that without such limitations it would encourage "practices which would tend to demoralize the profession by forcing its members into an unseemly rivalry which would enlarge the opportunities of the least scrupulous." *Semler v. Oregon State Board of Dental Examiners,* 294 US 608 at 612, 55 S Ct 570, 79 L Ed 1086 at 1090 (1934).[9]

Since "professional ethics" has this vague content (in large measure sensed only by those within the

---

[8] In Semler v. Oregon Dental Examiners, 148 Or 50, 54, 34 P2d 311 (1934), affirmed 294 US 608, 55 S Ct 570, 79 L Ed 1086, it is pointed out that the legislation in other states containing proscriptions similar to those expressed in ORS 679.140 and in the rules and regulations in the present case, "in most instances is an adoption of the rules of ethics of the American Dental Association * * *."

[9] Accord: Semler v. Oregon Dental Examiners, *supra*; Goe v. Gifford, 168 Va 497, 191 SE 783 (1937).

particular profession), the court should accept the standards propounded by those in the profession entrusted by the legislature with the duty of disciplining the members of the profession unless we can say that the standards are without reasonable foundation. We cannot say that any of the standards expressed in the rules and regulations in this case are beyond the needs of controlling the conduct of dental practitioners in advertising their services.

If the legislature desires to expand the limits of dental advertising beyond those regarded by the dental profession as essential to its integrity, it has the power to do so. Until it does, the Board of Dental Examiners is authorized to set reasonable standards of conduct and this they may do even if it may not comport with present practices which violate the principles of ethics recognized by the dental profession.